**Electronically Filed
Intermediate Court of Appeals
CAAP-14-0000696
05-FEB-2016
08:13 AM**

NO. CAAP-14-0000696

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee,
v.
JOSHUA WILLIAMS, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 10-1-0626)

MEMORANDUM OPINION
(By: Foley, Presiding Judge, Reifurth and Ginoza, JJ.)

In this appeal, Defendant-Appellant Joshua Williams
(Williams) appeals from the Judgment of Conviction and Sentence
(Judgment), filed March 14, 2014, in the Circuit Court of the
First Circuit (circuit court).[1]

The jury found Williams guilty of: Count 1, Murder in
the Second Degree of Jamil Khan (Khan), in violation of Hawaii
Revised Statutes (HRS) § 707-701.5 (2014) and HRS § 706-656 (1993
and Supp. 2013); Count 2, Commercial Promotion of Marijuana in
the First Degree, in violation of HRS § 712-1249.4(1)(c) (2014);
Count 3, Arson in the Second Degree, in violation of HRS § 708-
8252(1)(b) (2014); Count 4, Unauthorized Control of Propelled
Vehicle, in violation of HRS § 708-836 (2014); and Count 6,
Unlawful Use of Drug Paraphernalia, in violation of HRS § 329-

_____

[1] The Honorable Karen S.S. Ahn presided.

43.5(a) (2010). The jury found Williams not guilty of Count 5, Promoting a Dangerous Drug in the Third Degree, in violation of HRS § 712-1243 (2014).

On appeal, Williams contends the circuit court erred when it: (1) denied Williams' Motion in Limine requesting to exclude all evidence of post-mortem dismemberment from the trial on liability and limit that evidence to the trial on enhanced sentencing and (2) barred the use of the terms "jihadi," "9/11," and "paranoid" when describing the victim's violent character and unnecessarily sustained objections regarding testimony of Khan's violent character.

For the reasons discussed below, we affirm.

## I.   Evidence of Dismemberment

Williams contends that the circuit court erred in denying his Motion in Limine Number Two to Preclude Evidence of Post-Mortem Dismemberment and Disposal (Motion). Williams contends that, pursuant to State v. Janto, 92 Hawai'i 19, 986 P.2d 306 (1999), evidence of dismemberment should have been presented only during the bifurcated trial for enhanced sentencing pursuant to HRS § 706-657 (Supp. 2013).[2] Williams further contends that evidence of dismemberment was not

---

[2] HRS § 706-657 provides in pertinent part:

§706-657 Enhanced sentence for second degree murder. The court may sentence a person who has been convicted of murder in the second degree to life imprisonment without possibility of parole under section 706-656 if the court finds that the murder was especially heinous, atrocious, or cruel, manifesting exceptional depravity or that the person was previously convicted of the offense of murder in the first degree or murder in the second degree in this State or was previously convicted in another jurisdiction of an offense that would constitute murder in the first degree or murder in the second degree in this State. As used in this section, the phrase "especially heinous, atrocious, or cruel, manifesting exceptional depravity" means a conscienceless or pitiless crime which is unnecessarily torturous to a victim and "previously convicted" means a sentence imposed at the same time or a sentence previously imposed which has not been set aside, reversed, or vacated.

2

appropriate for the adjudicative portion of the trial because it does not prove an element of Murder in the Second Degree, in violation of HRS § 707-701.5(1),[3] and even if relevant, the dismemberment evidence was prejudicial, improper character evidence, and/or cumulative.

Under Janto, when the prosecution seeks an enhanced sentence pursuant to HRS 706-657, it must be alleged in the complaint and bifurcated proceedings are required. 92 Hawaiʻi at 33-34, 986 P.2d at 320-21. "[T]he jury must first return a verdict of guilty of the offense of murder. Thereafter, an evidentiary hearing before the jury will be required, in which the prosecution and defense will be allowed to present evidence and testimony regarding whether the murder was 'especially heinous, atrocious, or cruel.'" Id. at 34, 986 P.2d at 321. In this case, the circuit court bifurcated the adjudicative and enhanced sentencing proceedings, but Williams contends that Janto further supports the proposition that the evidence of dismemberment should have been admitted only during the enhanced sentencing portion of the trial, and not during the adjudicative portion of the trial relative to whether Williams was guilty of murder. We do not agree. Although Janto set out the requirement for the bifurcated proceedings, it does not preclude admission during the adjudicative portion of the trial of evidence relevant to whether the defendant is guilty of murder.

The circuit court ruled that dismemberment was relevant to the murder charge and appropriate evidence in the adjudicative portion of the trial because it shows Williams' state of mind akin to flight or disposing of the evidence. The court also determined that the evidence of dismemberment was relevant because it explained why the State did not produce Khan's body.

Hawaiʻi Rules of Evidence (HRE) Rule 401 provides: "'Relevant evidence' means evidence having any tendency to make

---

[3] HRS § 707-701.5(1) provides in pertinent part: "[A] person commits the offense of murder in the second degree if the person intentionally or knowingly causes the death of another person."

the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." A trial court's determination of whether evidence is relevant under HRE Rule 401 is reviewed under the right/wrong standard. State v. Behrendt, 124 Hawai'i 90, 102, 237 P.3d 1156, 1168 (2010).

In addressing the question of whether post-mortem dismemberment is relevant to proving murder, other states have answered the question in the affirmative. For example, in Schexnider v. State, 943 S.W.2d 194 (Tex. App. 1997), the defendant murdered then robbed the victim and "subsequently dismembered the corpse and disposed of the body parts in different locations." Id. at 201. The court concluded that the "jury could rationally infer that [the defendant] did such acts in order to conceal his crime." Id. In addition, the defendant's "conduct goes to the element of intent and is admissible under Rule 404(b)[4] as an exception to the principle that extraneous offenses are not to be admitted for the purpose of proving the character of the defendant in order to show that he acted in conformity therewith." Id. at 202. Finally, the court concluded that the defendant's "conduct in dismembering the body is also indicative of a consciousness of guilt[,]" that "[d]ismemberment of a person's body after killing him is hardly the action of an innocent accused," and that "evidence of such is probative of guilt." Id.; see also Mason v. Lockhart, 881 F.2d 573, 575 (8th Cir. 1989) (stating, in a case where the defendant confessed to shooting the victim but claimed self-defense, that "[t]he calculated behavior of the accused after the killing," which included dismemberment of the victim's body, is pertinent to whether premeditation and deliberate action existed); State v. Sokolowski, 522 S.E.2d 65, 71-72 (N.C. 1999); State v. Helmer, 545 N.W.2d 471, 478 (S.D. 1996) (stating the defendant's actions

---

4 Texas Rules of Evidence Rule 404(b) is substantially similar to Hawai'i Rules of Evidence, Rule 404(b).

after the murder, including dismemberment, "do not support a theory that the killing was the result of provocation or due to heat of passion").

In this case, Williams ultimately confessed that he and Michael Connolly killed Khan, but claimed that it was in self-defense after being threatened by Khan over a period of time. In our view, the evidence of dismemberment speaks directly to Williams' state of mind and is evidence that contradicts Williams' claim of self-defense. It also shows why the State did not have a body to support the claim of murder. Therefore, the circuit court was not wrong in deciding that the evidence of the dismemberment was relevant to the State's case of proving the murder of decedent Khan.

Williams further contends that evidence of dismemberment was inadmissible under HRE Rule 404(b), that the probative value of dismemberment was substantially outweighed by the danger of unfair prejudice under HRE Rule 403, and that the evidence relating to dismemberment was cumulative. With regard to the argument that the evidence was cumulative, Williams fails to set forth in his opening brief where this issue was preserved in the record, and thus that argument is waived. Hawaii Rules of Appellate Procedure (HRAP) Rule 28(b)(4). As to the rest of Williams' arguments, "other crimes" evidence under HRE Rule 404(b) "is admissible when it is 1) relevant and 2) more probative than prejudicial." Behrendt, 124 Hawai'i at 102, 237 P.3d at 1168. We review the question of relevance under the right/wrong standard, and we review questions regarding HRE Rule 403 balancing for abuse of discretion. Id.

The evidence of dismemberment was not precluded by HRE Rule 404(b). Under HRE Rule 404(b), evidence of "other crimes, wrongs, or acts" may be admissible "where such evidence is probative of another fact that is of consequence to the determination of the action, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, modus operandi, or absence of mistake or accident." (Emphasis

added). As set forth above, the evidence of dismemberment was probative of Williams' intent. Moreover, as the State argues in its answering brief, there was evidence in the record that Williams planned the murder and the dismemberment evidence is relevant to that issue as well.

HRE Rule 403 provides that although evidence is relevant, it "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." With regard to the HRE Rule 403 balancing, we recognize the potential prejudice resulting from the evidence of dismemberment. However, given the circumstances in this case, it was within the discretion of the circuit court to determine that the probative value of the evidence was not substantially outweighed by any prejudice. As noted previously, the dismemberment evidence was clearly relevant. Especially where Williams claimed that Khan was killed in self-defense, the dismemberment evidence was highly probative to the question of whether Williams' theory of defense was credible. The circuit court did not abuse its discretion with regard to the HRE Rule 403 balancing.

## II. Evidence of Khan's Violent Character

Williams next contends the circuit court erred in excluding certain evidence of Khan's violent character, which was necessary to show that Khan was the first aggressor.

### A. Picture of 9/11

Williams contends that the court erred when it excluded a picture of 9/11 from being displayed during Williams' opening statement. The circuit court found that under HRE Rule 403, the picture should be excluded because the picture was inflammatory and had little probative value.

The picture was not central and did not have high importance to Williams' case. In addition, the circuit court did not exclude all evidence associated with Khan's feelings towards

9/11 or how his personality progressively changed after 9/11. The circuit court did not abuse its discretion in excluding the picture because the minimal probative value the picture would offer was outweighed by the prejudicial effect on the jury.

**B.     Prohibition of the word "paranoid"**

Williams contends that the circuit court erred when it precluded either party from using the term "paranoid" to describe Khan.  The circuit court did not completely preclude use of the term "paranoid."  After the State objected to the use of "paranoid" when describing Khan, there was at least one instance when Williams asked a question containing the word "paranoid" and the circuit court allowed the witness to answer over the State's objection.  Subsequently, the circuit court limited the use of the word paranoid because the court stated that it was potentially misleading and did not necessarily equate to having an aggressive character.  Even after the court's ruling on the use of "paranoid," at least one witness described Khan as paranoid and no objection was made.

Under HRE Rule 403 balancing, we cannot say that the circuit court abused its discretion in limiting the use of the word "paranoid."  That is, based on the record, the circuit court acted within its discretion in determining that the probative value of evidence that Khan was "paranoid" was outweighed by the danger of misleading the jury because being paranoid did not necessarily mean Khan had an aggressive or violent character.

**C.     Prohibition of the word "jihadi"**

Williams contends the circuit court erred when it prohibited the use of the word "jihadi."[5]  The circuit court did not completely prohibit the use of the word jihadi or its derivative, but based on arguments by the State, did limit its use.  The circuit court stated that Williams could pursue the idea of "militant Islamic thought."  However, the circuit court limited the use of the term "jihadism" except as part of

---

[5]    The circuit court limited the use of the word jihadi and its derivatives such as "jihadism" or "jihadist."

Williams' confession that was played for the jury and, during voir dire in the event the word came out, to ask "is there anything about that and what it connotes to you?" The circuit court precluded Williams from referencing the fact that the AK-47 is the weapon of choice for the jihadist. Williams was not precluded, however, from introducing evidence that Khan frequently carried an AK-47.

The circuit court sustained an objection to the following question asked of witness Sharone Villa: "Did [Khan] ever discuss with you his desire to go to Pakistan and to be trained as a Jihadist or to go there and to fight?" The court, however, allowed the questions: "Did [Khan] ever discuss his going to Pakistan with you?"; and "Did [Khan] ever discuss with you any of his interests in militant Islam?".

Although the term jihadi or jihadist may have had some relevance in showing that Khan had a violent character, it also could be confusing to the issues in this case and also be misleading to the jury. Based on the examples above, although the court limited the use of the term jihadi and its derivatives, the court allowed other questions relating to Khan's violent character that were similar but excluded the specific term. Under HRE Rule 403 balancing, the circuit court did not abuse its discretion when it determined that the prejudicial effect of the term jihadi outweighed its probative value.

### D. Right to Confrontation

Williams contends that the circuit court violated his right to confrontation under Article I, Section 14 of the Hawaiʻi Constitution and the Sixth Amendment of the United States Constitution[6] when it did not allow Williams to use the terms "paranoid," and "jihad," when questioning witnesses. As noted

___

[6] Article 1, section 14 of the Hawaiʻi Constitution and the Sixth Amendment of the United States Constitution provide that in all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses against the accused. Haw. Const. art. I, § 14; U.S. Const. amend. VI.

above with regard to the prohibition of the terms "paranoid," and "jihad," the circuit court allowed questioning regarding Khan's violent character, it simply limited these specific terms. Therefore, the circuit court did not deny Williams his right to confrontation because Williams had other avenues of questioning the witnesses about Khan's violent character. See State v. Kassebeer, 118 Hawai'i 493, 514, 193 P.3d 409, 430 (2008) (stating the defendant was not denied his right of confrontation because the defendant had alternative means of cross-examining the witness).

### E. Khan's missing persons police report

Williams contends that the circuit court erred when it excluded evidence of an internal police report labeling Khan as armed and dangerous. The court found that the missing person report contained a general police classification based on hearsay and would not be admitted. The court stated the report did not add value to Williams' case especially in light of the fact that Williams was allowed to admit a lot of other evidence supporting the fact that Khan carried a gun. We conclude the circuit court did not abuse its discretion when it found that the police report had minimal probative value and thus excluded it from evidence.

### F. Testimony of witnesses regarding Khan's violent character

Williams contends the circuit court erred when it excluded the testimony of Jacob Estoesta (Estoesta) that Khan planned to blow up the Federal Building and the circuit court courthouse. The circuit court, however, allowed Estoesta to testify that Khan planned to use his explosives to blow up a building. The court excluded the specific building that Khan planned to blow up based on both relevance and hearsay. Based on our review of the record, the circuit court did not abuse its discretion when it excluded Estoesta's testimony that Khan wanted to specifically blow up the Federal Building and the circuit court courthouse.

Williams also contends that the circuit court erred when it did not allow Scott Gordon (Gordon) to testify about

9

homemade explosive devices, paranoid behavior, Khan's mental state, and whether Gordon was asked by the FBI about Khan wanting to make Williams and Michael Connely martyrs to jihadi causes. In fact, Gordon did testify that Khan showed Gordon a homemade hand grenade and Gordon also testified that Khan showed him notes for making a hand grenade. Gordon also testified that he spoke to the FBI, although further questions about Gordon's cooperation with the FBI were not allowed.

Contrary to Williams' contention, the court allowed Gordon to testify about Khan's mental state and paranoid behavior. The court sustained an objection to the question: "Did [Khan] behave in a paranoid fashion?" However, the court allowed Gordon to describe Khan as having "[h]is mind state of being paranoid" and justify his description by testifying that Khan carried a gun and Khan thought people were monitoring him. Overall, Williams' contentions that the circuit court abused its discretion in excluding parts of Gordon's testimony are without merit.

Williams also contends that the circuit court erred when it barred testimony from Bastian Goelz (Goelz), Officer Derrick Kiyotoki, Officer Ken Higa, and Tai Khan (Tai) about why the FBI was involved in investigating Khan's disappearance. Williams does not cite to the record showing specifically where the testimony was barred and upon review of the transcripts it does not appear that Williams' contention has merit.

Beginning with Goelz, during cross-examination, Williams never asked Goelz why the FBI was involved in the investigation. The questions were limited to the fact that Goelz was not forthcoming with the information he knew about Khan's disappearance. Next, when Williams asked Officer Kiyotoki if the FBI was present during the execution of a search warrant for Williams' house, the court sustained an objection based on relevance and that was the only question asked of Officer Kiyotoki regarding the FBI's involvement in Khan's disappearance. Additionally, Officer Higa testified that he knew the FBI was investigating the case, but Officer Higa did not speak to the FBI

10

or know what they did with the case. Finally, regarding Tai (Khan's father), the circuit court permitted Williams to ask Tai about the FBI's involvement and Tai revealed that he initially called the FBI after Khan was missing for several days in the hope that they could help locate Khan. Williams was also permitted to ask Tai about what he told the FBI regarding Khan's political beliefs and Tai responded that he could not remember, but that he possibly discussed his son's radicalization. Based on the questioning and testimony given by each of these witnesses, Williams' contention that the circuit court abused its discretion in barring testimony regarding the FBI's involvement in Khan's case is without merit.

## III. Conclusion

Based on the foregoing, the Judgment of Conviction and Sentence, filed March 14, 2014 in the Circuit Court of the First Circuit is affirmed.

DATED: Honolulu, Hawai'i, February 5, 2016.

On the briefs:

Peter Van Name Esser, and
Myles S. Breiner,
for Appellant.

Stephen K. Tsushima,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Appellee.

Presiding Judge

Associate Judge

Associate Judge

11